IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| CRYSTAL CLAYTON,<br><br>    Plaintiff,<br><br>vs.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security,<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER ON ADMINISTRATIVE APPEAL<br><br>Case No. 1:06-CV-69 TS |

I.  PROCEDURAL BACKGROUND

Plaintiff filed for SSI benefits on March 21, 2002, alleging disability due to back problems.  The claim was denied initially and upon reconsideration; a request for hearing was timely filed.  A hearing was held on September 17, 2003, where Plaintiff appeared and testified.  Additionally, Dina J. Galli, a vocational expert ("VE"), appeared and testified.  The Administrative Law Judge ("ALJ") issued an adverse decision on November 21, 2003.  Plaintiff timely made a request for review with the Appeals Council.  The Appeals Council denied the request for review.  Plaintiff filed a Complaint with this Court on October 22, 2004.  This Court then remanded the case, on motion of the Commissioner of Social Security ("the

Commissioner"), for further administrative proceedings held on June 9, 2005. On September 8, 2005, the Appeals Council remanded the case to the ALJ for a new hearing and decision.

A second hearing was held before the ALJ on January 19, 2006, where Plaintiff and the VE attended. The ALJ issued her second decision on March 31, 2006, again finding that Plaintiff was not disabled. The Appeals Council decided not to review the case on May 30, 2006, thereby accepting the ALJ's decision as the final decision of the Commissioner of Social Security ("the Commissioner"). The Court heard oral argument on this matter on January 18, 2007, and took the matter under advisement. The Court now issues the following ruling.

## II.  STANDARD OF REVIEW

This Court's review of the ALJ's decision is limited to determining whether her findings are supported by substantial evidence and whether the correct legal standards were applied.[1] If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed.[2]

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3] Also, "[s]ubstantial evidence requires 'more than a scintilla,

---

[1] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[2] *Richardson v. Perales*, 402 U.S. 389, 402 (1981).

[3] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

but less than a preponderance.'"[4]  The ALJ is required to consider all of the evidence, although he or she is not required to discuss all of the evidence.[5]

The Court should evaluate the record as a whole, including that evidence before the ALJ that detracts from the weight of the ALJ's decision.[6]  However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the ALJ's.[7]

### III.  DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining disability.[8]  The five steps are: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment; (3) whether the impairment meets or equals the criteria for an impairment listed in Appendix 1 of 20 C.F.R. Subpt. P; (4) whether the impairment prevents the claimant from performing her past relevant work; and (5) whether the impairment prevents the claimant from performing other work.  The burden is on the Plaintiff to meet the first four steps.  However, if Plaintiff does meet all four, the burden shifts to the Commissioner to establish that there are other jobs existing in a significant number in the national economy which Plaintiff is capable of performing.

---

[4] *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988) (citation omitted); *see also White v. Barnhart,* 287 F.3d 903, 905 (10th Cir. 2001).

[5] *Clifton*, 79 F.3d at 1009.

[6] *Shepard v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[7] *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

[8] *See* 20 C.F.R. § 404.1520(a)-(f).

Here, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the date she alleged that she became disabled. At step two, she found that Plaintiff's lower back problems and obesity were severe impairments.

At step three, the ALJ found that Plaintiff's conditions do not meet or equal a listed impairment, specifically, Listing § 1.04 for spine disorders. The ALJ considered, and rejected, the opinions of Drs. Sidney Hendricks, D.C., and Michael Jaffee, both treating physicians, as they related to Plaintiff's functional limitations. The ALJ also found that Plaintiff's testimony was not fully credible, and that Plaintiff retained the residual functional capacity ("RFC") to perform a range of light work, including the positions of file and general clerk, which would allow her to change positions at will.

At step four, the ALJ found that, with this RFC, Plaintiff was unable to perform her past work as a self-employed dog groomer. However, relying on VE testimony, the ALJ found that, with Plaintiff's RFC, age, education, work experience, and transferable work skills, Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a file clerk and general clerk. The ALJ's findings at steps one and two are not in dispute here.

In her appeal, Plaintiff raises the following issues: whether (A) the ALJ properly rejected the opinions of two of Plaintiff's treating physicians, and (B) the ALJ erred by finding that Plaintiff had skills transferable to file clerk and general clerk positions from her job as a dog groomer and business owner.

The Court has reviewed the facts as set forth by the parties in their briefs, as well as the entire certified record, and makes its ruling as discussed below.

*A. Rejection of the Opinions of Treating Physicians*

Plaintiff argues that the ALJ improperly rejected the opinions of two of her treating physicians. "An ALJ is required to give controlling weight to a treating physician's well-supported opinion, so long as it is not inconsistent with other substantial evidence in the record."[9] To the extent that the ALJ determines that a treating physician's opinion is not to be given controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927" which include:

> (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[10]

"After considering the pertinent factors, the ALJ must give good reasons in [the] notice of determination or decision for the weight [s]he ultimately assigns the opinion. If the ALJ rejects the opinion completely, [s]he must then give specific, legitimate reasons for doing so."[11]

The ALJ here gave less-than-full, and substantially reduced weight, respectively, to the opinions of: (i) Dr. Jaffe, and (ii) Dr. Hendricks. Because it appears from the record that the ALJ reduced the weight of, rather than rejected, the two treating physicians' testimonies, the Court

---

[9] *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir 2001).

[10] *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003).

[11] *Id.* at 1301.

examines the record to determine whether the ALJ gave good reasons as to the respective weights assigned these opinions.[12]

    (i) Dr. Jaffe

Plaintiff generally argues that the ALJ improperly concluded that the opinion of Dr. Jaffe, who concluded that Plaintiff was disabled, was inconsistent with that of other doctors and the objective medical evidence.  The ALJ gave Dr. Jaffe's opinion less than full weight because the ALJ found that it was inconsistent with:  the opinion of a consulting physician—Dr. Alexander, the findings of Dr. Steely, another of Plaintiff's treating physicians, and the findings of two state agency physicians.  Plaintiff argues that there are no such inconsistencies, or, to the extent that there are, they are far outnumbered by the consistencies among the opinions of the various physicians.

Plaintiff makes several specific contentions in support of her general argument above.  First, Plaintiff asserts that, because Dr. Jaffe referenced an MRI, bone scan, and x-ray tests, his opinion was not inconsistent with that of the objective medical evidence.  Moreover, Plaintiff states that the medical opinions of Drs. Oka—another of Plaintiff's treating physicians— and Dr. Alexander were consistent with that of Dr. Jaffe in that all of these doctors noted loss of reflexes, loss of range of motion, decreased strength, and positive straight leg raise.  Plaintiff attempts to minimize any inconsistencies between the opinions of Dr. Jaffe and the state agency physicians,

---

[12]While both parties argue the seemingly higher standard of "specific, legitimate reasons," there is no indication that the ALJ entirely rejected Dr. Jaffe's opinion.

asserting that "the findings of any non-treating physician based upon limited contact and examination are of suspect reliability."[13]

The Commissioner counters that the ALJ emphasized that the limitations described by Dr. Jaffe were not supported by objective medical evidence, including that set forth by Dr. Jaffe himself. Specifically, the ALJ noted that, despite his opinion that Plaintiff was functionally disabled, Dr. Jaffe stated, at various points, that the Plaintiff did not have radiculopathy (or nerve related pain or weakness), and that Plaintiff likely had no significant neurological compromise. Also, despite his opinion of functional disability, Dr. Jaffe recommended only conservative treatment, not surgery. The Commissioner also notes that the ALJ had reason to give Dr. Jaffe's opinion less weight because he examined Plaintiff only two times over a one year period.

The Commissioner also sets forth various other inconsistencies in the record, either upon which the ALJ relied in assessing the weight of Dr. Jaffe's opinion, or which were before the ALJ. First, the Commissioner notes that another of Plaintiff's treating physicians, Dr. Steely, told Plaintiff to exercise for 30 minutes, five times per week, a regimen inconsistent with the limitations set forth by Dr. Jaffe. Second, the Commissioner notes that Dr. Jaffe's opinion that Plaintiff was essentially bedridden was inconsistent with Plaintiff's testimony that lying down was uncomfortable. Third, the Commissioner asserts that Dr. Jaffe's opinion that Plaintiff was incapable of standing more than five minutes was inconsistent with Plaintiff's testimony that she could go grocery shopping a couple of times per week, and complete more extensive shopping trips on a monthly basis.

---

[13]*Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987).

The Court finds that the ALJ provided good reasons for giving Dr. Jaffe's opinion "less than full weight." Specifically, that Dr. Jaffe made reference to objective medical evidence in rendering his opinion is not sufficient to overcome the important inconsistencies that the ALJ found within Dr. Jaffe's own opinion, as well as between the opinions of Dr. Jaffe and Dr. Steely—another of Plaintiff's treating physicians—and between the opinion of Dr. Jaffe and the testimony of Plaintiff. Also, while the Commissioner does not argue the point, the record also indicates inconsistencies between the opinion of Dr. Jaffe and Dr. Alexander, a consulting physician. Dr. Alexander found that, although Plaintiff was slow, and had diminished range of motion in her back, Plaintiff was still able to dress and bath herself, do light chores around the house, walk without assistance, squat and get up, and downward flex. Accordingly, the ALJ's decision is supported by good reasons.

(ii) Dr. Hendricks

Plaintiff sets forth little argument as to why the ALJ erred in giving Dr. Hendricks' opinion substantially reduced weight other than to assert that, like Dr. Jaffe, Dr Hendricks' opinions was generally consistent with those of Drs. Oka and Alexander, in that they noted loss of reflexes, loss of range of motion, decreased strength, and positive straight leg raise.

After expressly addressing the factors provided in 20 C.F.R. § 404.1527 and 416.927, the ALJ found that Dr. Hendricks' opinion was entitled to substantially reduced weight. In doing so, the ALJ noted that Dr. Hendricks failed to produce any progress notes to support his

conclusions.[14] The ALJ also noted that Dr. Hendricks' treatment recommendations were conservative, and included pool therapy and weight loss programs. Finally, the ALJ noted that Dr. Hendricks' opinions were inconsistent with those of Dr. Alexander and the state agency physicians.

The Commissioner, citing *Castellano v. Secretary of Health & Human Services*,[15] correctly points out that the opinion of a treating physician can be rejected when it is unsupported by objective medical findings or office notes. The Commissioner also contends that the office notes of Dr. Hendricks, which were submitted after the ALJ's decision, are inconclusive as to Dr. Hendricks' opinion that Plaintiff had motor dysfunction, muscle weakness, neuropathy, reflex abnormalities, sensory loss, atrophy, and spasm. Next, the Commissioner emphasizes that Dr. Hendricks' opinion was inconsistent with that of Dr. Alexander, as well as those of the state agency physicians which concluded that Plaintiff could perform light work. Finally, the Commissioner emphasizes that Dr. Hendricks' prescription of conservative treatment like swimming, hydrotherapy, and weight loss are not consistent with his finding of Plaintiff's condition and functional limitations.

The Court finds that the ALJ had good reasons to give Dr. Hendricks' opinion substantially reduced weight. Despite some consistencies between the symptoms noted by Dr. Hendricks and those noted by the other physicians, Dr. Hendricks' ultimate conclusion was not

---

[14] The record indicates that Dr. Hendricks submitted two opinions in the form of a letter and a report.

[15] 26 F.3d 1027, 1029 (10th Cir. 1994) (affirming rejection of treating physician's opinion because not supported by records).

supported by progress, or any other notes.  Dr. Hendricks' opinion regarding Plaintiff's functional limitations was inconsistent with those of other physicians.  Finally, and importantly, Dr. Hendricks' prescribed only conservative, and not agressive, treatment for Plaintiff's condition.

### B. Finding of Transferable Skills

Plaintiff argues that the ALJ erred in finding that she had transferable skills.  Specifically, Plaintiff argues that in her past work as a dog groomer, she did not, or could not, acquire filing and record keeping, notation, customer service, and supply stocking skills sufficient to transfer to the jobs of file clerk and general clerk.

Plaintiff first notes the absence of the above-mentioned skills from the Dictionary of Occupational Title's ("DOT") description of the dog groomer position.  Plaintiff then argues that, while her testimony at the hearing somewhat supports that she acquired the skills, this is not substantial evidence.  In connection with this argument, Plaintiff points out that her testimony established that, in her capacity as a dog groomer, she would keep a card for each customer, take money from customers, and make a daily statement.  She did not do her own taxes, and ordered only $150 worth of supplies every other month.  Plaintiff argues that this type of activity cannot establish skills transferable to the positions of file and general clerks, which are very clerical in nature.  Finally, Plaintiff points out that, in the original hearing, the VE stated that Plaintiff had no transferable skills from her dog grooming job while, in the second hearing, the VE testified that Plaintiff had transferable customer service skills from the position.

The Commissioner argues that the ALJ properly relied on the VE's testimony that Plaintiff had transferrable skills from owning her dog grooming business.  The Commissioner

first asserts that it is not merely the dog groomer position, but the fact that Plaintiff operated her own dog grooming business that provides the relevant transferable skills. The Commissioner states that, while Plaintiff's skills are basic, the VE testified that Plaintiff had customer service, appointment keeping, and record keeping skills. Finally, the Commissioner asserts that there was no inconsistency between the testimony of the VE at the two hearings. Rather, the Commissioner contends that the VE testified at the first hearing, as in the second, that Plaintiff's actual dog grooming skills were not transferable to other light or sedentary positions, but that her business skills were.

The Court finds that the ALJ's determination that Plaintiff had skills transferable to the positions of file clerk and general clerk is supported by substantial evidence. It is undisputed that Plaintiff ran her own dog grooming business, and that, however small it was, she gained some degree of skill in customer service, appointment keeping, and record keeping skills. This constitutes substantial evidence, or more than a mere scintilla. The Court also finds, for the reasons argued by the Commissioner above, that there was no inconsistency between the VE's testimony at the first and second hearings.

## IV.  CONCLUSION

Having evaluated the record as a whole, the Court finds that the ALJ's findings are supported by substantial evidence, and that the ALJ applied the correct legal standards in denying Plaintiff disability benefits. In making its analysis as set forth above, the Court notes that it appears that Plaintiff asks the Court to re-weigh much of the evidence that was before the ALJ, and this Court will not do so. Therefore, the Court AFFIRMS the Commissioner's decision denying disability benefits to Plaintiff.

DATED   February 1, 2007.

                      BY THE COURT:

                      _____
                      TED STEWART
                      United States District Judge